UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT FLORIDA

CASE NO. 1:20-cv-22615-WILLIAMS

MALAUBE, LLC,

      Plaintiff,

vs.

GREENWICH INSURANCE COMPANY,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS AND INCORPORATED MEMORANDUM OF LAW [DE 10]**

      Plaintiff, Malaube, LLC, by and through their undersigned counsel, files its response in

opposition to Defendant Greenwich Insurance Company's ("Greenwich") Motion to

Dismiss ("Motion") [DE 10] and in support states as follows:

## I.     INTRODUCTION

      Plaintiff's policy is an "all risk" property policy that broadly covers loss resulting from any

kind of "physical loss or damage" unless excluded. Here, there is no applicable exclusion.  The

issue here (and in other cases filed around the country) is whether Covid-19 can potentially

constitute "physical loss or damage" as alleged by Plaintiff.  Such allegation should be taken at

true at this stage of the proceeding; that is, the referenced "Government Shutdowns" due to Covid-

19 forced Plaintiff to "suspend operations" thus "interfering with [Plaintiff's] access to its

business". [DE 5 at ¶¶13-20].

      Greenwich contends 1) that there is no Business Income coverage or Extra Expense

coverage because there is no allegation of "direct physical loss of or damage to Plaintiff's Covered

1

Property"; 2) that there is no Civil Authority coverage because there is no allegation of "physical damage" which prohibits Plaintiff from accessing Plaintiff's property and 3) that a "virus exclusion" in the policy excludes coverage.  [DE 10 at page 2]. Each of Greenwich's contentions are wrong.

Plaintiff's restaurant interruption is a "physical loss" event as a direct result of Covid-19 and the related Government Shutdown Orders. Plaintiff has lost the physical use of its restaurant, resulting in a significant loss of business income.  Moreover, as explained below, the "virus exclusion" relied upon by Defendant Greenwich does not exclude coverage or at best is ambiguous, and therefore must be construed in favor of coverage. *See, e.g., Washington National Ins. Corp. v. Ruderman,* 117 So.3d 943 (Fla. 2013) (where the Florida Supreme Court answered a certified question from the U.S. Eleventh Circuit, affirming that any insurance policy ambiguity *must* automatically be construed in favor of coverage without resort to extrinsic evidence). Accordingly, the Motion must be denied.

## II.      ARGUMENT

### A. Applicable general principals of law

Under Florida law, any ambiguity must be construed in favor of coverage. *See, e.g., Washington National Ins. Corp. v. Ruderman,* 117 So.3d at 943 (Fla. 2013). Thus, if there are two reasonable interpretations of the same language, then the Court must construe the language in favor of the insured. *Id.*at 948 ("policy language is considered to be ambiguous ... if the language 'is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage") (citation omitted).

**B. "Physical Damage" versus "Physical Loss"**

The Plaintiff's policy covers loss from a suspension of operations "caused by direct physical loss of or damage to property at premises which are described in the Declarations." [Doc.5-1 at Page  53]. There is much debate about whether "physical *loss*" is distinct from "physical *damage*". But it must be. The use of the disjunctive "or" in the phrase "direct physical loss or damage" suggests that either a loss or damage is required, and that a loss is distinct from damage. *See Foremost Ins. Co. v. Medders*, 399 So. 2d 128, 130 (Fla. 5th DCA 1981).  It is a fundamental rule of contract construction that a contract should not be interpreted in such a way to render provisions meaningless. *Bethany Trace Owners' Ass'n, Inc. v. Whispering Lakes I, LLC,* 155 So. 3d 1188 (Fla. 2nd DCA 2014). While "property damage" contemplates "structural" damage, "property loss" contemplates something different.  Here, the Government Shutdown Orders caused "physical loss" to Plaintiff's restaurant because the Orders determined that closing Plaintiff's restaurant and the businesses around it would mitigate against the spread of COVID-19, especially given that restaurants like Plaintiff's business are indoors and prolong close contact with individuals. *See, e.g.,* Amendment No. 2 to Miami-Dade County Emergency Order No. 26-20. Because of the Government Shutdown Orders, Plaintiff cannot make full use of its property. This is the type of "physical loss" for which there is coverage under the Policy.

> **I. The inability to use a restaurant for its intended purpose constitutes "direct physical loss or damage."**

> a.       "Direct physical loss or damage" does not require structural alteration.

There are numerous cases being cited throughout the country on the "direct physical loss or damage" issue.  Plaintiff submits that the better reasoned cases, and the cases consistent with Florida law, stand for the proposition that the Government Shutdown Orders at issue in this case

caused "direct physical loss". *See, e.g., Southlanes Bowl, Inc. v. Lumbermen's Mut. Ins. Co.*, 208

N.W.2d 569 (Mich. Ct. App. 1973) (held that under business interruption policies of plaintiff

insureds, engaged in business of operating places of amusement, physical damage to the insured

premises was not a prerequisite to insurers' obligation to reimburse insurance for net losses

resulting from closing of business by order of the governor during widespread riots and civil

commotion); *Sloan v. Phoenix of Hartford Ins. Co.*, 207 N.W.2d 434 (Mich. Ct. App. 1973)

(policy, which was drawn by insurer and which provided coverage against interruption of movie

theater business due to riot, provided coverage of loss due to compliance with governor's executive

order which, during period of riots, imposed curfew and closed places of amusement, though

premises did not sustain physical damage); *US Airways, Inc. v. Commonwealth Ins. Co.*, 65 Va.

Cir. 238 (2004) ("since MWAA's orders denied access to Reagan National Airport and denied

"access to real or personal property" of U.S. Airways, the orders qualify under the Civil Authority

provision of the Policy");  *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069

(Fla. 3d DCA 2017) (citation omitted) (a "loss" is a diminution of value of something and can

include a failure of something to perform its function); *Azalea, Ltd. v. American States Ins. Co.*,

656 So. 2d 600, 602 (Fla. 1st DCA 1995) (finding direct physical loss when the business could not

operate because a substance "actually covered and adhered to the interior of the structure"; and

thus acknowledging that "physical loss" did not require physical damage to the structure);  *Travco

Ins. Co. v. Ward*, No. 715 F. Supp. 2d 699, 708 (E.D. Va. 2010) (noting that the majority of cases

nationwide find that physical damage to property is not necessary where, at least, the property has

been rendered unusable by a covered cause of loss); *Sentinel Mgmt. Co. v. New Hampshire Ins.

Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) ("Direct physical loss also may exist in the

absence of structural damage to the insured property."); *Hughes v. Potomac Ins. Co.*, 18 Cal. Rptr.

650, 655 (Cal. Dist. Ct. App. 1962) (finding coverage when dwelling was unsafe due to a landslide); *Trinity Industries Inc. v. Insurance Co. of North America,* 916 F.2d 267, 270-271 (5th Cir. 1990) (defining "physical loss or damage" broadly to include "an initial satisfactory state that was changed by some external event into an unsatisfactory state.");  *Gen. Mills, Inc. v. Gold Medal Ins. Co*., 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) ("direct physical loss can exist without actual destruction of property or structural damage to property"…[w]hen General Mills is unable to lawfully distribute its products because of FDA regulations, that function is seriously impaired").

> b. <u>A property's unsuitability for an intended purpose constitutes "physical loss or damage."</u>

A court must consider the nature and  intended use of property, and the purpose of the insurance contract." *Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, No. CV-01-1362-ST, 2002 WL 31495830, at *28 (D. Or. June 18, 2002). The inability to use the property or a portion of the property for sit down dinning and/or in door dinning constitutes a direct physical loss. *See, e.g.*, *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968) (holding the loss of use of church, rendered uninhabitable by gasoline, constituted a direct physical loss). *Gregory Packaging, Inc. v. Travelers Property Casualty Co.*, No. 2:12-cv-04418, 2014 WL 6675934 at *16-*17.  (D. N.J. Nov. 25, 2014) (there was physical loss or damage to the plant from ammonia because "the heightened ammonia levels rendered the facility unfit for occupancy until the ammonia could be dissipated."); *TRAVCO Insurance Co. v. Ward*, 715 F. Supp. 2d 699, 709 (E.D. Va.2010), *aff'd*, 504 F. App'x. 251 (4th Cir. 2013) (the court found "direct physical loss" where a "home was rendered uninhabitable by the toxic gases" released by defective drywall, regardless of lasting physical damage to the property itself); *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 787

F.2d 349, 352 (8th Cir. 1986) (business income coverage available where there was risk of collapse of structure).

Defendant's reliance on *Mama Jo's, Inc. v. Sparta Insurance Co.*, No. 17-CV-23362-KMW, 2018 WL 3412974 (S.D. Fla. June 11, 2018), is misplaced. First, that case was a summary judgment case, not a motion to dismiss case. Second, the alleged cause was simply construction dust. Third, the business continued to operate and was not "uninhabitable" or substantially "unusable". *Id.* On the other hand, the Government Shutdown Orders have caused Plaintiff's business to be unusable in a very material aspect. There is a higher risk of COVID-19 with prolonged contact between individuals, especially in inside areas. The risk of transmission and property damage is heightened in restaurants, where air is recirculated and space is limited. The Government Shutdown Orders were issued as a result of the foregoing and resulted in a suspension of Plaintiff's ordinary course of business.

Based on the foregoing, Plaintiff has adequately pled that the Government Shutdown Orders have caused "physical loss and damage" because the Plaintiff's business can no longer operate for its intended purpose.

### C. The "Virus Exclusion" Does not Exclude Coverage

Provisions excluding or limiting the liability of the insurer are construed even more strictly against the insurer than those provisions that allow coverage, ((*Auto–Owners,* 756 So.2d 29, 34 (Fla. 2000)), and "the burden of proof rests on the insurance company to demonstrate that the coverage was inapplicable," ((*U.S. Concrete Pipe Co. v. Bould,* 437 So.2d 1061, 1065 (Fla.1983)). If exclusions are reasonably susceptible to more than one meaning, they are considered ambiguous and are to be construed in favor of the insured. *Swire Pac. Holdings,* 845 So.2d 161, 165 (Fla. 2003); *See also Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1309 (11th Cir. 2008), *certified question answered*, 29 So. 3d 1000 (Fla. 2010).

Thus, because the exclusion must be construed in favor of coverage and any ambiguities must be construed in favor of the insured, the Motion must be denied in the event that there is an ambiguity in the exclusion.  At best, there is.   The relevant language provides: "[w]e will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease[.]" *See* DE 10 at page 7. However, the Amended Complaint alleges that the Government Shutdown Orders, and not a virus, is what caused Plaintiff's business losses. *See* DE 5 at ¶¶13-20. It is the well-founded public reaction of the government authorities, in the current public health crisis, that has been the proximate cause of the interrupting Plaintiff's business.

Here, there virus exclusion is susceptible to more than one reasonable construction and as a result, the Motion must be denied. *See  Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.*, 2011 WL 6024572, at *6 (S.D. Fla. Dec. 2, 2011) (Moreno, C.J.) ("The contract section in dispute is reasonably susceptible to more than one interpretation, and thus this issue should be decided at the summary judgment stage and the motion to dismiss on this basis should be denied."); *Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*, 724 F. Supp. 2d 1228, 1239 (S.D. Fla. 2010) (Moreno, C.J.) (denying motion to dismiss because the "parties' differing interpretations of their respective obligations under the [contract] demonstrate that this issue is not ripe for decision at the motion to dismiss stage"); *Hypower, Inc. v. Saab Sensis Corp.,* 12-61668-CIV, 2013 WL 12141509, at *2 (S.D. Fla. May 10, 2013) (denying motion to dismiss when it would require the Court to construe and apply arguably ambiguous contract terms to the facts and potentially attempt to discern the parties' intent from course of dealing).

Plaintiff has specifically pled that the Government Shutdown Orders caused its losses and not the virus itself, and such allegation should be accepted for purposes of a Rule 12 Motion.

Defendant Greenwich's motion and proposed contract interpretation ignores that well established principle that Florida law requires strict construction of insurance contracts.  Notably, the virus exclusion does not mention a pandemic circumstance or damages resulting from a pandemic.  If Defendant Greenwich want to exclude coverage resulting from government orders, it could have said so. But it did not. The absence of a reference to a "pandemic" in the virus exclusion necessarily requires the denial of Defendant's Motion.

Because Plaintiffs' loses were not specifically caused by a "virus", but instead were caused by the Government Shutdown Orders; the virus exclusion is not operative and the subject policy affords Plaintiff coverage.[1]

### III.    CONCLUSION

For the reasons set forth hereinabove, Defendant's Motion should be denied.

---

[1] The validity, purpose, and scope of the virus exclusion is being investigated by Plaintiff and other litigants around the country, including Defendant's and other insurer's contention that insured did not pay for the coverage that they are seeking, and whether the insurance industry is estopped from relying on the virus exclusion due to misrepresentations made to regulators who had to grant approval to the virus exclusion in policies. This is a further reason why dismissal is not appropriate at this juncture.

Respectfully submitted,

HERSKOWITZ SHAPIRO
Two Datran Center
9130 S. Dadeland Blvd., Suite 1609
Miami, FL 33156
t: (305) 423-1986; f: (305) 670-3884

By:     */s/ Lyle E. Shapiro*
          LYLE. SHAPIRO
          Florida Bar No: 120324
          lyle@hslawfl.com
          KRYSTINA T. ENDARA
          Florida Bar No.: 1004139
          krystina@hslawl.com

**AND**

GALLUP AUERBACH
4000 Hollywood Boulevard Presidential Circle-Suite 265 South Hollywood, Florida 33021
t: 954-894-3035; f: 954-894-8015

By:     */s/ Jacob K . Auerbach* JACOB K. AUERBACH Florida Bar No: 084003 jauerbach@gallup-law.com

*Counsel for Plaintiff*

9

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on July 30, 2020, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record indicated in the attached service list via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/  *Lyle E. Shapiro*
Lyle E. Shapiro