UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:20-cv-22615-WILLIAMS

MALAUBE, LLC,

     Plaintiff,
vs.

GREENWICH INSURANCE COMPANY,

     Defendant.

**DEFENDANT, GREENWICH INSURANCE COMPANY'S REPLY MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

## I. INTRODUCTION

In the "Introduction" section of its Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Response"), Plaintiff insists that there is no applicable exclusion, and that the issue in this case is whether COVID-19 can potentially constitute "physical loss or damage" as alleged by Plaintiff. [Resp., p.1]. Further, the Plaintiff asserts that the Government Shutdowns due to the COVID-19 pandemic forced Plaintiff to "suspend operations" thus "interfering with Plaintiff's access to its business". [*Id*.] Plaintiff's arguments fail for multiple reasons.

First, Plaintiff ignores the plain language of the Policy's virus exclusion, which bars coverage for all Business Income loss that is caused by or results from a virus that is capable of inducing disease, which clearly includes the COVID-19 virus.

Second, Plaintiff ignores the fact that the Government Shutdown Orders expressly allowed Plaintiff's restaurant to remain open to provide delivery and take-out dining services.

Case No. 1:20-cv-22615-WILLIAMS

Third, Plaintiff's argument that the inability to use its restaurant to allow for in-service dining constitutes "direct physical loss of or damage to" the Insured property, is unavailing and contrary to prevailing analogous case law.

## II. ARGUMENT

### A. Plaintiff's Attempt to Avoid the Virus Exclusion Defies the Plain Language of the Contract and Controlling Precedent.

In its Motion to Dismiss, Greenwich showed that the Plaintiff alleges financial losses that fall squarely within the Policy's virus exclusion, which applies to all "loss or damage caused by or resulting from any virus…that is capable of inducing physical distress, illness or disease." [See Document 5-1 at Page 67]. Plaintiff's attempts to avoid application of the virus exclusion are ineffectual.

Plaintiff represents that the virus exclusion at issue is ambiguous, and therefore the exclusion must be construed in favor of coverage, because any ambiguities must be construed in favor of the Plaintiff. [Resp., p. 7]. However, the Plaintiff fails to identify the virus exclusion wording that is ambiguous and offers no analysis to support the assertion that the exclusion is unclear and was not intended to apply in the context of a pandemic.

The virus exclusion appears in an endorsement titled 'EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," which modifies the Policy's Commercial Property Coverage Part. [See Document 5-1 at Page 67]. The first paragraph of the endorsement states that the virus exclusion "applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property **and forms or endorsements that cover business income, extra expense or action of civil authority**." [*Id*. (emphasis added)] Under Florida law, an insurance policy

provision is "ambiguous" only if it is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage. *Shaw v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 605 F.3d 1250, 1252 (11th Cir. 2010). Here, the virus exclusion is clear and unambiguous and should be applied to preclude coverage for Plaintiff's claims.

Further, the Response asserts that Plaintiff pled that the Government Shutdown orders, not the COVID-19 virus, caused the loss, and that its allegations should be accepted for purposes of a Rule 12 Motion. Plaintiff asserts in the Response that "It is the well-founded public reaction of the government authorities, in the current public health crisis, that has been the proximate cause of the interrupting [sic] Plaintiff's business." [Resp., p. 7]. Plaintiff is attempting to remove the COVID-19 Virus from the chain of causation, relying on the Government Shutdown Orders as the proximate cause and ignoring the role of the virus. Plaintiff cannot deny that the Government Shutdown Orders were issued in response the COVID-19 pandemic. The virus clearly was the cause that led to the issuance of the Government Shutdown Orders. Thus, there is no doubt that the financial losses Plaintiff claims under Business Interruption and Civil Authority coverages were "caused by or result[ed] from" a virus, and such losses are excluded.

Moreover, Plaintiff ignores the fact that the very Civil Authority coverage on which it relies requires that the Civil Authority order be issued in response to "damage to property":

> **When a Covered Cause of Loss causes damage to property other than property at the described premises**, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, **provided that both of the following apply**:
>
> (1) **Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage**, and the described premises are within that area but are not more than one mile from the damaged property; and

Case No. 1:20-cv-22615-WILLIAMS

> (2) **The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage**, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

[See Document 5-1 at Page 54.] The Plaintiff alleges no damage to property other than the "damage" supposedly caused by the COVID-19 virus. But if the presence of the COVID-19 virus is the so-called "damage" which the civil authority action responded to, then the virus exclusion plainly applies (excluding "loss or damage caused by or resulting from any virus").

The Plaintiff also asserts that the virus exclusion does not mention a pandemic circumstance or damages resulting from a pandemic, and the absence of a reference to "pandemic" in the virus exclusion necessarily requires the denial of Greenwich's Motion to Dismiss. [Resp., p. 8). Specifically, Plaintiff states "The validity, purpose, and scope of the virus exclusion is being investigated by Plaintiff and other litigants around the country, including Defendant's and other insurer's contention that insured did not pay for the coverage that they are seeking, and whether insurance industry is estopped from relying on the virus exclusion due to misrepresentations made to regulators who had to grant approval to the virus exclusion in policies." [*Id*.] Plaintiff asserts this is another reason why dismissal is not appropriate at this juncture. This argument fails because, as stated above, Plaintiff offers no textual analysis of the virus exclusion that would support the assertion that the exclusion was not intended to apply in the context of a pandemic or that the virus exclusion is somehow ambiguous. In *Dimmit Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp.*, 636 So. 2d 700 (Fla. 1993) the Supreme Court of Florida found it inappropriate and unnecessary to consider arguments pertaining to the drafting history of the pollution exclusion at issue, in the absence of any ambiguous policy language. Absent a showing that the virus

ZELLE LLP
SunTrust International Center, One Southeast Third Avenue, Ste. 1600, Miami, Florida 33131
Telephone 786-693-2350 – Facsimile 612-336-9100
Page **4** of **11**

exclusion is ambiguous, it would be inappropriate to consider arguments pertaining to the drafting history of the virus exclusion.

> **B.  Plaintiff's Arguments Do Not Establish that "Physical Damage" is distinct from "Physical Loss".**

Plaintiff argues that there is a distinction to be made between "Physical Damage" and "Physical Loss," [Resp., p. 3], but offers no legal authority or analysis that supports this position. Plaintiff asserts that "physical damage" contemplates "structural" damage, and that "physical loss" contemplates something different, and argues that "the Government Shutdown Orders caused 'physical loss' to Plaintiff's restaurant because the Orders determined that closing Plaintiff's restaurant and the businesses around it would mitigate against the spread of COVID-19 . . ." [Resp., p. 3]. However, Plaintiff fails to identify any meaningful difference between "physical damage" and "physical loss." Plaintiff merely asserts that physical loss contemplates something other than structural damage, without offering an explanation of what "physical loss" actually contemplates or how the orders limiting the Plaintiff's restaurant operations caused any "direct physical loss" to the property.

Where courts have construed "direct physical loss," they universally have declined to extend coverage for "loss of use" absent—at a minimum—some precipitating physical event or physical force that was applied to the property and caused the loss of use. Even under the most expansive view of "direct physical loss" where there is no demonstrable structural injury or alteration to the covered property, courts still look for the "crucial interaction between the covered property and some outside physical force." *Ne. Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No. 2:12-CV-00245-WCO, 2014 WL 12480022, *6 (N.D. Ga. May 23, 2014). To hold otherwise would render the word "physical" meaningless in the context of these policies. Florida law

requires courts, in construing insurance policies, to read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.  *See Shaw*, 605 F.3d at 1252.

### C. Plaintiff's Arguments Do Not Establish Structural Alteration Not Is Required.

Plaintiff cannot credibly allege that its restaurant operations were suspended by direct physical loss of or damage to property, and in fact operations were never suspended, nor was there any physical loss or damage.  Use of the property was restricted, to reduce the risk of the spread of the COVID-19 virus, but operations were not suspended and the property was physically unaffected.  Essentially, Plaintiff argues that the loss of use of its restaurant for dine-in services equates to a direct physical loss.  As to that issue, this Court should hold that there is no dispute that Plaintiff has not suffered a covered direct physical loss.

The cases Plaintiff cites in support of the assertion that "Direct physical loss or damage" does not require structural alteration are all readily distinguishable.  Plaintiff cites to *Southlanes Bowl, Inc. v. Lumbermen's Mut. Ins. Co.*, 208 N.W.2d 569 (Mich. Ct. App. 1973), which was expressly distinguished by *Southern Hospitality, Inc. v. Zurich American Ins. Co.*, 393 F.3d 1137 (10th Cir.2004).  *Southern Hospitality* held that coverage under a property insurance policy for business income loss caused by action of a civil authority that prohibited access to the insured premises did not apply to lost income suffered by insured hotel operators when customers were prevented from reaching hotels by air due to the Federal Aviation Administration order grounding all flights in wake of 9/11.  The Court reasoned that the order prohibited access to flights, rather than access to hotels, and the order did not close hotels.

Plaintiff also cites *to Sloan v. Phoenix of Hartford Ins. Co.*, 207 N.W.2d 434 (Mich. Ct. App. 1973), which was expressly distinguished by *Roundabout Theatre Co. v. Continental Casualty Co.,* 302 A.D.2d 1 (N.Y. App. Div. 2002).  In *Roundabout*, the court rejected a claim for

losses incurred where a government street closure order rendered the insured's property inaccessible. The court held that the "loss of, damage to, or destruction of property" policy provision did not provide coverage for "loss of use" of the property and that the policy language at issue "clearly and unambiguously" provided coverage only where the insured's property suffered direct physical damage. *Id.* at 6. Notably, *Roundabout* rejected the very argument Plaintiff now advances, that "loss of" would be redundant to "destruction of" property if it does not mean "loss of use." The court there reasoned that "loss of" could refer to theft or misplacement of property. *Roundabout*, 302 A.D.2d at 7.

Plaintiff also cites to *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010), *aff'd*, 504 F. App'x 251 (4th Cir. 2013), which addresses losses caused by toxic gases from Chinese drywall being emitted on the property. *Travco* is distinguishable because, unlike here, there was a physical element that interacted with the property and rendered it unusable. Indeed, recognizing the requirement that the loss have a "physical" cause, *Travco* explicitly relied on cases holding that "physical damage to the property is not necessary, *at least where the building in question has been rendered unusable by physical forces.*" *Id.* at 708 (emphasis added).

Plaintiff also seeks support from *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067 (Fla. 3d DCA 2017), but that case supports dismissal here. In *Homeowners Choice*, the court explicitly stated:

> A 'loss' is the diminution of value of something, and in this case, the insureds' house or personal property … 'Direct' and 'physical' modify loss and impose the requirement that the damage be actual. Examining the plain language of the insurance policy in this case, it is clear that the failure of the drain pipe to perform its function constituted a 'direct' and 'physical' loss to the property within the meaning of the policy.

*Id.* At 1069. As the court in *Homeowners Choice* explicitly stated, the words "direct" and "physical" impose the requirement that the damage be "actual." Here, there is no actual direct or physical loss to the Plaintiff's property.

Plaintiff also cites *Azalea, Ltd. v. American States Ins. Co.*, 656 So. 2d 600, 602 (Fla. 1st DCA 1995), where the Appellate court reversed the holding of the trial court and found there was "direct physical loss" where chemicals dumped into a sewage system destroyed a bacteria colony that was an integral part of a sewage treatment facility. Plaintiff argues that this "physical loss" did not require physical damage to the structure. In other words, Plaintiff argues that the mere presence of contamination that adheres to a structure can cause direct physical loss. However, in *Azalea*, there actually was a structural alteration. The court found that the bacteria colony was specifically attached to and became part of the treatment facility structure, and the facility could not operate or exist unless the colony was replaced. [*Id.*] The residue from the unknown substance actually covered and adhered to the interior of the structure causing destruction of the bacteria colony which was an integral part of the covered facility. [*Id.*] Moreover, if the alleged physical loss at issue here is the presence of the COVID-19 virus, that so-called "physical loss" would be plainly excluded by the virus exclusion.

The same arguments made by Plaintiff here, based on the same basic case law on which Plaintiff relies, were soundly rejected earlier today by Judge Kelly Higashi in another restaurant case brought in the Superior Court for the District of Columbia. *Rose's 1, LLC, et al. v. Erie Insurance Exchange*, No. 2020 CA 002424 B (Order attached as Exhibit A). The Court in Rose's 1 noted that the civil authority orders by the local mayor "did not effect any direct changes to the properties" and "did not have any effect on the material or tangible structure of the insured properties." *Id.* at 5. Further, the Court explained:

> [U]nder a natural reading of the term "direct physical loss," the words "direct" and "physical" modify the word "loss." As such, pursuant to Plaintiffs' dictionary definitions, any "loss of use" must be caused, without the intervention of other persons or conditions, by something pertaining to matter – in other words, a direct physical intrusion on to the insured property. Mayor Bowser's orders were not such a direct physical intrusion.
>
> Further, none of the cases cited by Plaintiffs[1] stand for the proposition that a governmental edict, standing alone, constitutes a direct physical loss under an insurance policy.

*Id*.

### D. Plaintiff's Inability to Use its Property for an Intended Purpose Does Not Constitute Physical Loss or Damage.

Plaintiff argues that the inability to use its restaurant for an intended purpose constitutes physical loss or damage, but that argument also fails.

First, Plaintiff was never prevented from operating take-out and delivery services, so Plaintiff has been able to operate the restaurant for the purposes of providing food orders to customers. Also, the cases Plaintiff cites to are all readily distinguishable. Plaintiff cites to *Western Fire Ins. Co. v. First Presbyterian Church,* 437 P.2d 52, 54 (Colo. 1968) to support its position that the inability to use the property or a portion of the property for sit-down dining and/or indoor dining constitutes a direct physical loss. In *Western Fire*, loss of use resulted from the "infiltration of gasoline in the soil under and around the building, which gasoline and vapors thereof infiltrated and contaminated the foundation and halls and rooms of the [property]..." *Western Fire* is distinguishable from the case at issue because there was a physical contaminant that intruded onto the insured property to cause the loss of use.

---

[1] Including *Gregory Packaging*, *Western Fire*, *Sloan* and *TRAVCO,* all cited by Plaintiff here and distinguished herein.

Likewise, in every other case Plaintiff cites for this proposition there was a physical contaminant that intruded onto the insured property or some physical force that acted upon the property to cause the loss of use.[2] Plaintiff's reliance on these decisions is misplaced for multiple reasons. There is no Florida authority that equates the mere inability to use or occupy insured property with "physical loss of or damage to" property. Further, all of the decisions cited on page 5 of Plaintiff's Response involved external substances that actually rendered the property unusable, including cases where buildings were affected by pervasive odors, harmful fumes, mold, or other harmful agents. By contrast, Plaintiff does not allege that the COVID-19 virus was present in Plaintiff's restaurant or rendered the property physically unfit for use.

### III.   CONCLUSION

For the reasons set forth herein and in its Motion to Dismiss Plaintiff's First Amended Complaint, Greenwich requests that the Court dismiss the causes of action asserted by Plaintiff in its First Amended Complaint in their entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: August 6, 2020

Respectfully submitted,

s/Christine M. Renella
Christine M. Renella (Bar No. 65485)
crenella@zelle.com
ZELLE LLP
SunTrust International Center

---

[2] *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of America*, Civ. No. 2:12–cv–04418 (WHW), 2014 WL 6675934 (D.N.J. Nov. 25, 2014) (ammonia spill on facility); *Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, No. CV-01-1362-ST, 2002 WL 31495830 (D. Or. June 18, 2002) (homeowner's policy covered for mold damage); *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010), *aff'd*, 504 F. App'x 251 (4th Cir. 2013) (toxic gases from Chinese drywall being emitted on to the property); *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349 (8th Cir. 1986) (Insured forced to vacate its building due to danger of the building's collapse).

Case No. 1:20-cv-22615-WILLIAMS

One Southeast Third Avenue, Ste. 1600 Miami, Florida 33131-4332<br>
Tel: 305-299-9939<br>
crenella@zelle.com<br><br>
Dan Millea (admitted pro hac vice on 7/6/2020)<br>
ZELLE LLP<br>
500 Washington Avenue S., Suite 4000<br>
Minneapolis, MN 55415<br>
Tel: 612-336-9170<br>
dmillea@zelle.com<br><br>
<em>Counsel for Defendant Greenwich Insurance Company</em>

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by CM/ECF on August 6, 2020, on all counsel or parties of record below.

| | |
|---|---|
| **Lyle E. Shapiro**<br>**Krystina T. Endara**<br>lyle@hslawfl.com<br>Krystina@hslawfl.com<br>**HERSKOWITZ SHAPIRO**<br>Two Datran Center<br>9130 S. Dadeland Blvd., Suite 1609<br>Miami, Florida 33156<br>Tel: (305) 423-1986<br>*Attorneys for Plaintiff* | **Jacob K. Auerbach**<br>**GALLUP AUERBACH**<br>jauerbach@gallup-law.com<br>4000 Hollywood Boulevard<br>Presidential Circle-Suite 265 South<br>Hollywood, Florida 33021<br>Tel: (954) 894-3035<br>*Attorney for Plaintiff* |

s/Christine M. Renella<br>
Christine M. Renella