**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-22615-Civ-WILLIAMS/TORRES

MALAUBE, LLC,

     Plaintiff,

v.

GREENWICH INSURANCE COMPANY,

     Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO DISMISS**

     This matter is before the Court on Greenwich Insurance Company's ("Defendant" or "Greenwich") motion to dismiss against Malaube, LLC's ("Plaintiff") amended complaint. [D.E. 10]. Plaintiff responded to Defendant's motion on July 30, 2020 [D.E. 14] to which Defendant replied on August 6, 2020. [D.E. 15]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendant's motion to dismiss should be **GRANTED**.[1]

---

[1]    On August 7, 2020, the Honorable Kathleen Williams referred Defendant's motion to dismiss to the undersigned Magistrate Judge for disposition. [D.E. 16].

## I.  BACKGROUND

Plaintiff filed this action on April 23, 2020 [D.E.1] in Florida state court, seeking to recover insurance benefits for the loss of business income as a result of government shutdowns in response to the COVID-19 pandemic.[2]  On September 25, 2019, Greenwich entered into an insurance contract with Plaintiff with the latter agreeing to make payments in exchange for Greenwich's promise to indemnify for losses including business income at Plaintiff's restaurant.[3]  Plaintiff alleges that the insurance policy is in full effect, providing business income and personal property insurance from September 25, 2019 to September 25, 2020.

On March 17, 2020, Miami-Dade Mayor Carlos Gimenez signed an order to close all restaurants for indoor dining and only permitted takeout and delivery as a result of the COVID-19 pandemic.  Florida Governor, Ron DeSantis, then issued an executive order on March 20, 2020 that closed all onsite dining at restaurants.[4]  Plaintiff claims that these orders resulted in significant business losses for Plaintiff's restaurant and that Greenwich was obligated to pay because of government orders that prohibited access to indoor dining.   When Plaintiff demanded payment for these losses, Greenwich denied Plaintiff's claim because Plaintiff did not experience any physical loss or damage to the insured property. Plaintiff now fears that, with Greenwich's improper denial of its insurance benefits,

---

[2]   Defendant removed this case to federal court on June 24, 2020 based on the Court's diversity jurisdiction.  Plaintiff is a citizen of Florida and Greenwich is a citizen of Delaware and Connecticut.

[3]   The restaurant serves Italian food at 5748 Sunset Drive, Miami, FL 33143.

[4]   We refer to these collectively as the Florida Emergency Orders.

its restaurant may be forced to close permanently.   Therefore, Plaintiff seeks a declaratory judgment that that the insurance policy provides coverage for the losses stemming from the government shutdowns including costs, prejudgment interest, and attorney's fees.

## II.   APPLICABLE PRINCIPLES AND LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted.   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.   *Id.*   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).   "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted).   Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").   In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference."   *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).   Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.

>    *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are
>    "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012).   The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III.   ANALYSIS

Defendant seeks to dismiss Plaintiff's amended complaint for three independent reasons.[5]  First, Defendant argues that the insurance policy was never triggered because it excludes any coverage for viruses, bacteria, or other microorganisms that induce physical distress, illness, or disease.   Second, Defendant claims that there is no insurance coverage because Plaintiff failed to allege that it suffered any direct physical loss or damage to property.  And third,

---

[5]      In determining whether Plaintiff's amended complaint fails to state a claim, we may consider the language of the policy itself because exhibits are part of a pleading "for all purposes." Fed. R. Civ. P. 10(c); *see also Solis–Ramirez v. U.S. Dep't of Justice,* 758 F.2d 1426, 1430 (11th Cir. 1985) ("Under Rule 10(c) Federal Rules of Civil Procedure, such attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion.").   To the extent the complaint's allegations conflict with the exhibit, the exhibit must control.  *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.") (citing *Crenshaw v. Lister,* 556 F.3d 1283, 1292 (11th Cir. 2009)).

Defendant reasons that the two Florida Emergency Orders never prohibited Plaintiff from accessing the insured property – a prerequisite that must be satisfied before insurance coverage can apply. Before we consider the merits, we must consider the general principles governing the interpretation of insurance contracts under Florida law. These principles are necessary, as they will inform the analysis that follows.

### A.    *General Principles of Insurance Contracts*

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)). The interpretation of an insurance contract – including the question of whether an insurance provision is ambiguous – is a question of law. *See id.*; *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003) (stating that whether an ambiguity exists in a contract is a matter of law).

In addition, "[u]nder Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained,

forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972)); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties.").

However, if there is more than one reasonable interpretation of an insurance policy, an ambiguity exists and it "should be construed against the insurer." *Pac. Emp'rs Ins.*, 2007 WL 2900452, at *4 (citing *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997)). Where an interpretation "involve[s] exclusions to insurance contracts, the rule is even clearer in favor of strict construction against the insurer: exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured." *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1228 (11th Cir. 2005) (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen,* 498 So. 2d 1245, 1248 (Fla. 1986)). An insurance policy must, of course, be ambiguous before it is subject to these rules. *See Taurus Holdings, Inc.*, 913 So. 2d at 532 ("Although ambiguous provisions are construed in favor of coverage, to allow for such a construction the provision must actually be ambiguous."). An ambiguous policy must, for example, have a genuine inconsistency, uncertainty, or ambiguity in meaning after the court has applied the ordinary rules of construction. *See Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.,* 711 So. 2d 1135 (Fla.

1998). "Just because an operative term is not defined, it does not necessarily mean that the term is ambiguous." *Amerisure Mut. Ins. Co. v. Am. Cutting & Drilling Co.*, 2009 WL 700246, at *4 (S.D. Fla. Mar. 17, 2009) (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,* 845 So. 2d 161, 166 (Fla. 2003)).

On the other hand, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Hagen v. Aetna Cas. & Sur. Co.,* 675 So. 2d 963, 965 (Fla. 5th DCA 1996). Ultimately "in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence." *Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co.*, 254 F.3d 987, 1003 (11th Cir. 2001) (quoting *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993)).

When the parties dispute coverage and exclusions under a policy, a burden-shifting framework applies. "A person seeking to recover on an insurance policy has the burden of proving a loss from causes within the terms of the policy[,] and if such proof of loss is made within the contract of insurance, the burden is on the insurer to establish that the loss arose from a cause that is excepted from the policy." *U.S. Liab. Ins. Co. v. Bove,* 347 So. 2d 678, 680 (Fla. 3d DCA 1977) (alteration added; citations omitted). If the insurer is able to establish that an exclusion applies, the then burden shifts back to the insured to prove an exception to the exclusion. *See id.*;  *see also IDC Const., LLC. v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1348 (S.D. Fla. 2004) ("When an insurer relies on an exclusion to deny coverage, it has the

burden of demonstrating that the allegations in the complaint are cast solely and entirely within the policy exclusions and are subject to no other reasonable interpretation."). That is, "if there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion." *East Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 678 (Fla. 3d DCA 2005) (citing *LaFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1516 (11th Cir. 1997)).

> **B.**     ***The Business Income Exclusion***

Having set forth the relevant legal principles, Defendant's strongest argument is that Plaintiff's amended complaint fails to state a claim because the insurance policy only provides coverage for the actual loss of business income if a *direct physical loss or damage* to the property causes a suspension to Plaintiff's operations:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations.

[D.E. 5-1 at 53]. The policy further provides coverage for extra expenses during a period of restoration, but that also only applies if the insured property suffers direct physical loss or damage:

> Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.
>
> Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been on

direct physical loss or damage to property caused by or resulting from
a Coverage Cause of Loss.

*Id*. at 53.

Defendant argues that Plaintiff has failed to state a claim because there are
no allegations that the insured property has ever suffered a direct physical loss or
damage.  Instead, Plaintiff alleges that two Florida Emergency Orders limited the
full use of its restaurant and that, as a result, Plaintiff suffered significant
businesses losses.  [D.E. 5 at ¶¶ 13-14 ("On March 17, 2020, Miami-Dade Mayor,
Carlos Gimenez, signed an order to close all restaurants for dining in and only
permitting takeout and delivery.  On March 20, 2020, the Florida Governor, Ron
DeSantis, issued an executive order closing all onsite dining at restaurants")].
Defendant also states that the amended complaint concedes that the Florida
Emergency Orders were issued in response to the COVID-19 pandemic and entirely
unrelated to any physical loss or damage to Plaintiff's property.  *See id*. at 18 ("The
Government Shutdowns that interfered with [Plaintiff] access to its business came
as a result of the COVID-19 pandemic.").   Because Plaintiff's allegations seek
coverage for pure economic losses stemming with no connection to any physical loss
or damage, Defendant reasons that Plaintiff's amended complaint must be
dismissed.

Plaintiff's response is that there is an ongoing debate in both state and
federal courts on the meaning of "direct physical loss" and "direct physical damage."
Plaintiff contends, for example, that the use of the "or" in the phrase "direct
physical loss or damage" suggests that the two terms are not the same, and that

they must be distinct.  If the terms were the same, Plaintiff believes that it would render some component of the insurance policy meaningless and undermine a fundamental rule of Florida contract law.  *See, e.g.*, *Westport Ins. Corp. v. Tuskegee Newspapers, Inc.*, 402 F.3d 1161, 1166 (11th Cir. 2005) ("[A] court will attempt to give meaning and effect, if possible, to every word and phrase in the contract, . . . and a construction which neutralizes any provision of a contract should never be adopted if the contract can be so construed as to give effect to all the provisions.") (quoting *J. Appleman, Insurance Law and Practice* § 7383 (1981)).

Plaintiff also states that the Florida Emergency Orders caused a direct physical loss because they forced Plaintiff to close its indoor dining to mitigate the spread of COVID-19.  As support, Plaintiff references several state and federal court opinions – some of which date back to the 1970s – with a contention that these are the "better reasoned cases" in the ongoing debate and that they are consistent with Florida law.  Plaintiff then asserts, with a reference to several other cases, that the inability to use the intended purpose of a business constitutes a direct physical loss because Plaintiff had no option other than to close the indoor dining section of its restaurant.  Thus, Plaintiff equates the closure of its indoor dining to a physical loss because the business could no longer operate for its intended purpose.

To begin, Plaintiff's response is, in many respects, unhelpful because it is conclusory and fails to put forth any substantive reasons in support of its position. Plaintiff makes assertions, for example, that physical damage is different from physical loss and then follows that statement with a string cite of parentheticals

with no explanation as to how any of the cases are relevant.  Plaintiff complicates matters further when it references cases, some of which are decades old, across the country (including Michigan, Minnesota, and California) but then fails to offer any analysis whatsoever.  Plaintiff just leaves it for the Court to examine these cases, and to do the work that Plaintiff should have done in the first place.  That is, Plaintiff invites the Court to develop its own argument and determine which of these cases (1) are relevant to Florida law, (2) are applicable to the insurance policy in this case, (3) offers a persuasive distinction between physical loss and damage, and (4) are analogous to the partial closure of a business.  Hence, Plaintiff's response is largely unpersuasive. *See United States Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. 3rd DCA 1977) (stating that a party claiming coverage has the burden of proof to establish that coverage exists).

Putting aside this problem, Plaintiff argues that physical loss does not require structural alteration and that a property's inability to operate with its intended purpose (i.e. the operation of both its indoor and outdoor dining sections) falls within the insurance policy's coverage.  The policy does not define "physical loss" or "physical damage."  However, "[t]he mere failure to provide a definition of a term involving coverage does not render the term ambiguous." *Those Certain Underwriters at Lloyd's London v. Karma Korner, LLC*, 2011 WL 1150466, at *2 (M.D. Fla. 2011) (citation omitted).  When a policy does not define a term, the plain and generally accepted meaning should be applied. *See Evanston Ins. Co. v. S & Q Prop. Inv.*, LLC, 2012 WL 4855537, at *2 (S.D. Fla. 2012).

11

Defendant argues that, under the plain meaning of the word "physical", Plaintiff has not alleged coverage for any loss because, by definition, the policy excludes losses that are intangible. *See, e.g.*, 10A *Couch On Insurance* § 148.46 (3d Ed. 2019) ("[T]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."). This is persuasive, in some respects, because courts in our district have found that "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010)), *aff'd*, 2020 WL 4782369 (11th Cir. Aug. 18, 2020).

While neither party cited a binding decision on the meaning of "direct physical loss" or "direct physical damage" under Florida law, a case that addresses many of the arguments presented is a district court's recent decision in *Studio 417, Inc. v. Cincinnati Ins. Co.*, 2020 WL 4692385, at *4 (W.D. Mo. Aug. 12, 2020). There, the plaintiffs purchased insurance policies for their hair salons and restaurants. The policies provided coverage for physical losses or physical damages,

and the plaintiffs argued that they should recover the insurance proceeds as a result of the Covid-19 pandemic. The defendants moved to dismiss because – with the policies requiring either a direct physical loss or damage – the plaintiffs could not recover unless there was an actual, tangible, permanent, or physical alteration to the insured properties. The district court rejected that argument, however, because "loss" and "damage" could not be conflated with the "or" separated between them. Instead, the court had to "give meaning to both terms," to avoid the other from being superfluous. *Studio 417, Inc.*, 2020 WL 4692385, at *5 (citing *Nautilus Grp., Inc. v. Allianz Global Risks US*, 2012 WL 760940, at * 7 (W.D. Wash. Mar. 8, 2012) (stating that "if 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous")).

The district court then referenced several decisions where courts have recognized that, absent a physical alteration, a physical loss may occur when a property is uninhabitable or substantially unusable for its intended purpose. *Studio 417, Inc.*, 2020 WL 4692385, at *5 (citing *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (affirming the denial of coverage but recognizing that "[w]hen the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct [physical] loss to its owner"); *Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*, 2002 WL 31495830, at * 9 (D. Or. June 18, 2002) (citing case law for the proposition that "the inability to inhabit a building [is] a 'direct, physical loss' covered by insurance"); *General Mills, Inc. v. Gold Medal Ins.*

*Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) ("We have previously held that direct physical loss can exist without actual destruction of property or structural damage to property; it is sufficient to show that insured property is injured in some way.")); *see also Murray v. State Farm Fire & Cas. Co.,* 203 W.Va. 477, 509 (1998) (holding policyholders to suffer a "direct physical loss" when their homes were rendered uninhabitable due to threat of rockfall); *W. Fire Ins. Co. v. First Presbyterian Church,* 165 Colo. 34, 437 P.2d 52, 55 (1968) (holding that the policyholder suffered "direct physical loss" when "the accumulation of gasoline around and under the [building caused] the premises to become so infiltrated and saturated as to be uninhabitable, making further use of the building highly dangerous").

The court also acknowledged that there were cases where an actual alteration was required to show a "physical loss," but distinguished those on the basis that they were, for the most part, decided on a motion for summary judgment, factually dissimilar, or non-binding. *Id.* (citing *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006) (affirming the denial of insurance coverage on a motion for summary judgment and under Minnesota law)); *Mama Jo's, Inc.*, 2018 WL 3412974, at *8 (granting summary judgment in favor of the insurance company because the plaintiff could not "show that there was any suspension of operations caused by 'physical damage.'") (citing *Ramada Inn Ramogreen, Inc. v. Travelers Indem. Co. of Am.*, 835 F.2d 812, 814 (11th Cir.

1988) ("[R]ecovery is intended when the loss is due to inability to use the premises where the damage occurs.").[6]

In light of these decisions, the district court denied the defendant's motion to dismiss because the plaintiffs alleged that COVID-19 was a highly contagious virus that was *physically present* in viral fluid particles and deposited on surfaces and objects. The plaintiffs further alleged that the physical substance was on the premises and caused them to cease or suspend operations. That is, "[r]egardless of the allegations in . . . other cases, Plaintiffs . . . plausibly alleged that COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable." *Studio 417, Inc.*, 2020 WL 4692385, at *6. And that was "enough to survive a motion to dismiss." *Id.*

This case is materially different because Plaintiff has not alleged any physical harm. There is no allegation, for example, that COVID-19 was physically present on the premises. Instead, Plaintiff only alleges that two Florida Emergency

---

[6]     In *Source Food*, the insured's beef was not allowed to cross from Canada into the United States because of an embargo related to mad cow disease. The insured was therefore unable to fill orders and had to find a new supplier. The insured sought coverage based on a provision requiring "direct physical loss to property," but the district court denied coverage and the Eighth Circuit affirmed, explaining that:

> Although Source Food's beef product in the truck could not be transported to the United States due to the closing of the border to Canadian beef products, the beef product on the truck was not—as Source Foods concedes—physically contaminated or damaged in any manner. To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless.

*Source Food Tech., Inc.*, 465 F.3d at 838.

Orders forced the closure of its restaurant.  And, as stated earlier, courts have found this to be insufficient to state a claim because there must be some allegation of actual harm:

> The critical policy language here—"direct physical loss or damage"—similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage.  [Plaintiff] simply cannot show any such loss or damage to the 40 Wall Street Building as a result of either (1) its inability to access its office from October 29 to November 3, 2012, or (2) Con Ed's decision to shut off the power to the Bowling Green network.  The words "direct" and "physical," which modify the phrase "loss or damage," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014).

Plaintiff's allegations are insufficient to state a claim for an entirely separate reason because, when we examine the language of the insurance policy, "direct physical" modifies both "loss" and "damage."  That means that any "interruption in business must be caused by some *physical problem* with the covered property . . . which must be caused by a 'covered cause of loss.'"  *Philadelphia Parking Authority v. Federal Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005); *see also United Airlines, Inc. v. Ins. Co. of State of Pa.,* 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) ("The inclusion of the modifier 'physical' before 'damages' . . . supports [defendant's] position that physical damage is required before business interruption coverage is paid.").

Florida's appellate courts are in agreement with this interpretation. The Third District has found, for instance, that a "loss" constitutes a diminution of value and that, with the modifiers "direct" and "physical," the alleged damage *must be actual*:

> A "loss" is the diminution of value of something, and in this case, the 'something' is the insureds' house or personal property. Loss, *Black's Law Dictionary* (10th ed. 2014). "Direct" and "physical" modify loss and impose the requirement that the damage be actual. Examining the plain language of the insurance policy in this case, it is clear that the failure of the drain pipe to perform its function constituted a "direct" and "physical" loss to the property within the meaning of the policy.

*Homeowners Choice Prop. & Cas. v. Miguel Maspons*, 211 So. 3d 1067, 1069 (Fla. 3rd DCA 2017); *see also Vazquez v. Citizens Prop. Ins. Corp.*, 2020 WL 1950831, at *3 (Fla. 3rd DCA Mar. 18, 2020) ("Consistent with this plain meaning, the trial court determined that the 'insured loss' is the property that was actually damaged."); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.,* 1999 WL 619100, at *7 (D. Or. Aug. 4, 1999) (holding that a policyholder could not recover under a policy requiring "physical loss" unless the claimed mold physically and demonstrably damaged the insured property); *MRI Healthcare Ctr. of Glendale, Inc.*, 187 Cal. App. 4th at 779 ("A direct physical loss contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.") (internal quotation marks and citation omitted); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 42 (Ohio Ct. App. 2008).

The Eleventh Circuit's decision in *Mama Jo's Inc. v. Sparta Ins. Co.*, 2020 WL 4782369, at *1 (11th Cir. Aug. 18, 2020), is also consistent with our interpretation of Florida law. There, the plaintiff owned and operated a restaurant and, from December 2013 until June 2015, there was roadway construction in its general vicinity. The construction generated dust and debris, requiring the plaintiff to perform daily cleanings. Although the restaurant was open every day during the roadwork, customer traffic decreased and the business suffered an economic loss. The plaintiff was insured under a policy, which included coverage for loss of business. This policy covered "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." *Id.* at *1 (citation and quotation marks omitted). The plaintiff submitted a claim to the insurer on the basis that dust and debris caused a loss in business. The insurer denied that claim because the proof of loss form failed to reflect the existence of any physical damage (and it was questionable whether a direct physical loss occurred). Thus, the insurer concluded that plaintiff's claim was not covered under the policy.

After finding no error in the district court's decision to exclude several of the plaintiff's experts, the Eleventh Circuit found that the plaintiff failed to show any evidence of direct physical loss or damage. The plaintiff alleged that his insurance claim had two components: one for cleaning the restaurant and another for the loss of business income. In determining whether coverage existed, the Court looked to the same Florida decisions we referenced above and found that "direct physical loss" is defined as a diminution in value and that the modifiers "direct" and "physical"

"imposed the requirement that the damage be actual."  *Id.* (citing *Homeowners Choice Prop. & Cas.*, 211 So. 3d at 1069; *Vazquez*, 2020 WL 1950831, at \*3).

The Court then examined whether coverage existed for the cleaning claim because the plaintiff's public adjuster testified that cleaning and painting was all that was required.  In fact, there was no need for the removal or replacement of any items during the construction.  The Eleventh Circuit found that, based on the evidence that the district court considered, the cleaning claim did not constitute a direct physical loss because these expenses are merely economic losses.  *Id.* at \*8 ("We conclude that the district court correctly granted summary judgment on Berries' cleaning claim because, under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'") (citing *Maspons*, 211 So. 3d at 1069 (recognizing that "damage [must] be actual"); *Vazquez*, 2020 WL 1950831, at \*3 (same)); *see also Universal Image Prods., Inc. v. Fed. Ins.* Co., 475 F. App'x 569, 573 (6th Cir. 2012) ("[C]leaning . . . expenses . . . are not tangible, physical losses, but economic losses."); *MRI Healthcare Ctr. of Glendale, Inc.*, 187 Cal. App. 4th at 779 ("A direct physical loss 'contemplates an actual change in insured property."); *AFLAC Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306, 307 (2003) (same).

The Eleventh Circuit also agreed with the district court, with respect to the business loss claim, because that too required that a suspension of operations be caused by direct physical loss or damage to the property.  Yet, the plaintiff failed to put forward any evidence that it suffered a direct physical loss or damage during

the policy period.   And in the absence of any evidence of actual damage, the Eleventh Circuit concluded that the district court was correct in granting the insurer's motion for summary judgment.

When comparing *Mama Jo's* to the allegations in this case, Plaintiff's allegations are far weaker.   Although the plaintiff in *Mama Jo's* failed to put forth any evidence that his cleaning claim constituted a direct physical loss, he at least alleged that there was a physical intrusion (i.e. dust and debris) into his restaurant. Plaintiff has done nothing similar in this case.   Plaintiff merely claims that two Florida Emergency Orders closed his indoor dining.   But, for the reasons already stated, this cannot state a claim because the loss must arise to actual damage.   And it is not plausible how two government orders meet that threshold when the restaurant merely suffered economic losses – not anything tangible, actual, or physical.

As a last ditch effort, Plaintiff suggests that we should adopt a more expansive definition of "direct physical loss or damage," so that coverage could apply if the property is either uninhabitable or substantially unusable.   *See, e.g.*, *Port Auth. of New York & New Jersey*, 311 F.3d at 236 ("When the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner."). Assuming we were inclined to ignore both Eleventh Circuit and Florida precedent, Plaintiff still fails to state a claim because – even under an expanded definition – there are no allegations that the restaurant was uninhabitable or substantially

unusable.  Plaintiff only alleges that the government forced it to close its indoor dining to contain the spread of COVID-19.  The government permitted Plaintiff to continue its takeout and delivery services.  While Plaintiff never makes clear whether it undertook either of these options, the government never made the restaurant uninhabitable or substantially unusable.  Therefore, under no definition of "direct physical loss or damage" has Plaintiff stated a claim where coverage exists under this insurance policy.

Although unnecessary to the disposition of the motion to dismiss, other provisions of the insurance policy support the same interpretation.  Take, for instance, the "Business Income" and "Extra Expense" provisions where it provides coverage for Plaintiff's operations during a "period of restoration."  [D.E. 5-1 at 53].  A "period of restoration" is defined in the policy as beginning "(1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or (2) [i]mmediately after the time of direct physical loss or damage for Extra Expenses Coverage[.]"  *Id*. at 61.  The policy then states that this "period of restoration" "[e]nds on the earlier of (1) [t]he date when the property at the described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar quality; or (2) [t]he date when business is resumed at a new permanent location."  *Id*. (emphasis added).

"The words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it."  *Newman Myers Kreines Gross Harris, P.C.,* 17 F. Supp. 3d at 332 (*United Airlines,* 385 F. Supp. 2d at 349 (policy language

limiting coverage "for only such length of time [needed] to rebuild, repair or replace such part of the Insured Location(s) as has been damaged or destroyed" supports the notion that "physical damage is required before business interruption coverage is paid"); *Philadelphia Parking Auth.*, 385 F. Supp. 2d at 287 ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature.")). This means that, if we construe "direct physical loss or damage" to require actual harm, it gives effect to the other provisions in the policy. And that is exactly what Florida law requires us to do so that no section of the insurance policy is left meaningless. *See Aucilla Area Solid Waste Admin. v. Madison Cty.*, 890 So. 2d 415, 416–17 (Fla. 1st DCA 2004) ("Pursuant to the principles of contract construction, we must construe the provisions of a contract in conjunction with one another so as to give reasonable meaning and effect to all of the provisions.") (citing *Hardwick Properties, Inc. v. Newbern,* 711 So. 2d 35, 40–41 (Fla. 1st DCA 1998)). And making matters worse, the policy further provides that the period of restoration "does not include any increased period required due to the enforcement of any ordinance or law that . . . [r]egulates the construction, *use* or repair . . . of any property[.]" [D.E. 5-1 at 61]. Thus, if there was any lingering doubt on whether a loss of use for pure economic reasons could be recoverable under the policy, the other provisions of the policy put that uncertainty to bed. Accordingly, Defendant's motion to dismiss should be **GRANTED**.

22

### IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED**.  If viable under Rule 11, any amended complaint should be filed within (14) fourteen days from the date the District Judge adopts this Report and Recommendation.[7]

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 26th day of August, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[7]   Because Plaintiff's complaint fails for the reasons stated above, we offer no opinion on Defendant's remaining arguments.  To the extent Plaintiff files an amended complaint, it should ensure that it can survive any other exclusion that may exist under the policy.